UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
<u>JACKSONVILLE DIVISION</u>

| | | |
|---|---|---|
| In re | ) | |
| TIJUANA FLATS RESTAURANTS, LLC, *et al*,[1] | ) | Case Nos.  3:24-bk-1122-BAJ and  3:24-bk-1128-BAJ |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | Jointly Administered Under Case No. 3:24-bk-1128-BAJ |
| _____ | ) | |

<u>DEBTORS' MOTION FOR AUTHORITY TO SUSPEND
NON-RESIDENTIAL REAL PROPERTY LEASE PAYMENTS</u>

**(Expedited Hearing Requested)**

Debtors, Tijuana Flats #176, LLC and Tijuana Flats Restaurants, LLC (collectively, the "Debtors"), move the Court, pursuant to 11 U.S.C. § 365(d)(3) for authority to suspend all non-residential real property lease payments for May 2024, and in support of the motion state:

<u>Background</u>

1. On April 19, 2024 (the "Petition Date"), Tijuana Flats #176, LLC ("TJ 176"), filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

2. Later that same morning, its parent, Tijuana Flats Restaurants, LLC ("Restaurants, LLC"), filed its voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code.

---

[1] The Federal Employer Identification Number of Tijuana Flats Restaurants, LLC is 47-4472442.  The principal address of the Debtor is 2300 Maitland Center Parkway, Suite 306, Maitland, Florida 32751.

3. The Debtors are continuing in possession of their properties and are managing their businesses, as debtors in possession, pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

4. Restaurants, LLC owns and operates 65 "Tijuana Flats" restaurants located across Florida, inclusive of TJ 176. Its restaurants provide fast, casual dining featuring a "Tex-Mex" cuisine.

5. Previously, each of the company restaurants operated as a separate limited liability company, all owned by Restaurants, LLC, with Debtor utilizing a consolidated cash management system for each of its subsidiaries. On April 15, 2024, however, all but one of the operating subsidiaries were "rolled up" and merged into Restaurants, LLC. Another 11 restaurants deemed to be unprofitable were not merged into Restaurants, LLC and were instead closed during the week of April 15, 2024. A separate subsidiary entity, TJF Franchise Group, LLC, continues to operate another 26 restaurants independently through franchise agreements with third-party operators.

6. The Debtors do not own the real estate where they operate. The real property is instead leased from over sixty different property owners (the "Collateral") pursuant to lease agreements (the "Leases"). The aggregate monthly payment(s) required under the Leases is approximately $625,000, which is one of Debtors' largest monthly operating expenses.

7. Tijuana Flats finds itself before this Court following a confluence of adverse events. In May of 2023, Tijuana Flats' then lender, Truist Bank, required Debtor to post $1.2 million in an interest reserve. That payment, coupled with the required

scheduled quarterly principal reduction payments of $250,000 each, stripped the company of much-needed working capital during a challenging operational period.

8. In 2021 and 2022, prior management sought to increase revenues and profits by expanding menu options. The menu changes had the opposite effect, however, as the menu additions required more equipment, staffing and time to prepare. The latter point led to slower delivery of food to the customers, higher costs, and growing dissatisfaction among the company's customer base, with a resulting drop in sales over time.

9. In addition, profit margins have been extremely compressed due to the rapid increases in food and labor costs and changes in consumer spending habits in the post-COVID inflationary environment. Attempts to raise prices to meet these economic challenges have met with limited success, eventually requiring the closure of 29 corporate-owned restaurants between January and April of 2024. Competition in this market segment is also fierce.

10. Due primarily to the adverse economic factors outlined above, Debtors were unable to make the rent payments required for January through April 2024 at most of its locations. The pre-petition rent due is approximately $940,000, most of which is for rent due in March and April 2024. These Chapter 11 cases were initiated, in part, following the Debtors' receipt of three-day lease termination letters received from Landlords at many locations.

11. Debtors did not, however, arrive in this Court with an abundance of cash reserves as a result of the missed rent payments as the Debtors were still covering losses for approximately 23 stores closed between January and April of this year.

12.    Instead, the Debtors are confronted with new sets of challenges which impose additional strains on liquidity.  For one, many of the Debtors' pre-petition vendors are requiring up-front cash payments before delivering products, which has resulted in more cash having to be deployed earlier than originally projected.  Debtors are also having to "ramp up" product purchases to meet the expected demands attendant the upcoming Cinco de Mayo holiday and various menu improvements.  Those expenditures will total $307,000 in the first week of May.  Based on current projections, there will therefore be a timing-based cash shortfall of $85,000 for the week of May 6, 2024, if May rent payments are not suspended, meaning Debtors will have little to no access to cash to fund unanticipated expenditures or food purchases.

13.    In addition to the foregoing, the Debtors are also having to raise sufficient funds to place post-petition security deposits with the various utilities providing services to the Debtors' locations.  With weekly utility consumption ranging between $35,000 and $47,000, those required deposits could total over $185,000.  With no outside funding being made available to cover these one-time charges, the Debtors have determined that the necessary deposits can only be raised through immediate rent relief available under § 365(d)(3) of the Bankruptcy Code.

## Relief Requested

14.    By this motion, the Debtors seek authority to suspend all non-residential lease payments due to the Landlords for May 2024 rent.

## Legal Authority

15. In a normal Chapter 11 case, a debtor in possession is required to timely perform all obligations of the debtor arising under any unexpired lease of non-residential real property. 11 U.S.C. § 365(d)(3). Section 365(d)(3) of the Bankruptcy Code provides an exception to the general rule however and allows a debtor to seek a 60-day reprieve from having to make lease payments in appropriate cases:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. *The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60-day period.* This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.
>
> 11 U.S.C. § 365(d)(3) (emphasis added).

16. The reprieve available under § 365(d)(3) does not eliminate the obligation to pay rent for the deferral period; rather, the unpaid post-petition rent becomes an administrative expense claim to be paid in connection with the assumption of the lease(s) under § 365(a) or, in the event of a lease rejection, on or before confirmation of a plan of reorganization as required by 11 U.S.C. § 1129(a)(9).

17. While the Debtors have no desire to accrue administrative expenses, Debtors will begin paying regular rent obligations again in June 2024.

18. Like it or not, Debtors and the Landlords are joined at the hip in the effort to reorganize as closure of the Debtors' enterprise will likely result in the leased locations being closed and not generating rents for extended periods of time. Keeping the restaurants operating as going concerns preserves value for all parties.

19. "Cause" therefore exists to suspend the lease payments due Landlords for May 2024.

WHEREFORE, Debtors respectfully request the entry of an order (i) suspending all non-residential lease payments during May 2024, and (ii) granting such further relief as is deemed appropriate.

THAMES | MARKEY

By  */s/ Richard R. Thames*
    Richard R. Thames
    Bradley R. Markey

Florida Bar No. 0718459
Florida Bar No. 0984213
50 N. Laura Street, Suite 1600
Jacksonville, Florida 32202
(904) 358-4000
(904) 358-4001 Facsimile
rrt@thamesmarkey.law
brm@thamesmarkey.law

Proposed Attorneys for Debtor