**ORDERED.**

Dated:  August 15, 2024

_____
Jason A. Burgess
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re | ) | |
| TIJUANA FLATS RESTAURANTS, LLC, *et al*,[1] | ) | Case Nos.  3:24-bk-1122-BAJ and  3:24-bk-1128-BAJ |
| | ) | |
| Debtors. | | Chapter 11 |
| | ) | |
| | | Jointly Administered Under Case No. 3:24-bk-1128-BAJ |
| _____ | ) | |

**FINAL ORDER AUTHORIZING**
**DEBTORS' CONTINUED USE OF CASH COLLATERAL**

These Chapter 11 cases came before the Court upon the motion filed by debtor, Tijuana Flats Restaurants, LLC for itself and its subsidiary, Tijuana Flats #176, LLC (collectively, the "Debtors"), seeking the entry of interim and final orders, pursuant to §§ 105(a), 361, 363(c), 503(b) and 507 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtor to utilize the cash collateral of it secured

---

[1] The Federal Employer Identification Number of the Debtor is 47-4472442.  The principal address of the Debtor is 2300 Maitland Center Parkway, Suite 306, Maitland, Florida 32751.

creditor, LSC2022, LLC ("LSC2022").  Preliminary hearings on the motion were held April 23, 2024, on May 23, 2024, and August 13, 2024.  Upon consideration of the motion, it is ORDERED:

1. Pursuant to 11 U.S.C. § 363(c)(2), Debtors are hereby authorized to continue utilizing the cash collateral of LSC2022 on a final basis to pay ordinary course obligations or other sums permitted by order of the court to pay ordinary cause obligations or other sums permitted by order if the court until this order is amended or superseded.

2. As adequate protection for any diminution in the value of cash collateral and other prepetition collateral resulting from the Debtors' use thereof after the Petition Date ("Diminution"), LSC2022 shall be entitled to a continuing replacement lien and security interest (the "Rollover Lien") in all assets of the Debtors existing on or after the Petition Date of the same type as the prepetition collateral, together with the proceeds, rents, products and profits thereof, whether acquired or arising before or after the Petition Date, to the same extent, validity, perfection, enforceability and priority of the liens and security interests of LSC2022 as of the Petition Date.  The Rollover Lien shall be limited to the amount of any Diminution and does not extend to any avoidance claims held by the estate.

3. With the exception of $200,000 administrative "carve-out" for Debtors' professionals (the "Carve-Out"), the Rollover Lien shall not be subject or subordinate to (i) any liens arising after the Petition Date except for any liens or security interests in favor of any federal, state, municipal or other government unit, commission, board or court for any tax liability of the Debtors, whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both and a tax of a kind

specified in 11 U.S.C. § 507(a)(8), or (ii) any other lien or security interest under 11 U.S.C. §§ 363 or 364, or otherwise.

4. As additional adequate protection for any Diminution, LCS2022 shall have a superpriority administrative expense claim pursuant to § 507(b) of the Bankruptcy Code, with recourse to and payable from any and all assets of the Debtors' estates, including but not limited to rights of the Debtors, choses in action, or claims of any kind whatsoever, choate or inchoate, present or residual which for any reason cannot be made the subject of the Rollover Lien (the "Secured Party Superpriority Claims"). The Secured Party Superpriority Claims shall be subject only to the Carve-Out and shall have priority over any and all administrative expenses, diminution claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in §§ 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under §§ 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code.

5. All cash, income or revenues received by Debtors shall be deposited into the debtor in possession bank account or such other accounts as may be permitted to be maintained pursuant to separate order of this Court (the "DIP Accounts") and shall only be used for the payment of actual and necessary expenses of preserving the estates, including professional fees and costs authorized under §§ 328 and 330 of the Bankruptcy Code. All disbursements from the DIP Accounts shall be accounted for in the monthly debtors in possession operating reports to be filed by Debtors with the Court.

6. The lien granted hereunder shall be valid and perfected without the need for the execution of filing of any further document or instrument otherwise required to be filed under applicable non-bankruptcy law.

7. The Debtors' authority to use Cash Collateral hereunder shall terminate without any further action by this Court and a Termination Event shall occur without prior notice upon the occurrence of any of the following (also a "Termination Event"):

    i. the Debtors' Chapter 11 cases are dismissed or converted to a case under Chapter 7 of the Bankruptcy Code;

    ii. the earlier of (y) the date of the entry of an order of this Court appointing a Chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in §§ 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code) for the Debtors; or (z) the date the Debtors file a motion, application or other pleading consenting to or acquiescing in any such appointment;

    iii. this Interim Order becomes stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of LSC2022;

    iv. an order is entered in the Chapter 11 Case over the objection of LSC2022 approving financing pursuant to § 364 that would grant an additional security interest or a lien on any Collateral or granting a superpriority administrative claim that is equal or superior to the superpriority administrative claim granted to LSC2022 under this Interim Order; or

    v. an adversary proceeding or contested matter is commenced by the Debtors challenging the amount, validity, enforceability, priority or extent of LSC2022's liens, security interests or claims.

8. LSC2022 shall be entitled to the full protections of § 363(m) of the Bankruptcy Code with respect to the Rollover Lien and all other adequate protection created or authorized by the cash collateral order in the event that the order or any authorization contained therein is stayed, vacated, reversed or modified on appeal. Any stay, modification, reversal, or vacation of the cash collateral order shall not affect the

validity of any obligation of the Debtors to LSC2022, incurred pursuant to the cash collateral order.

Steretto, Inc. is directed to serve this Order on parties entitled to service of this order who are non-CM/ECF users and to file proof of same within 3 days of the date of this Order.