**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| TIJUANA FLATS RESTAURANTS, LLC, *et al*,[1] | ) | Case Nos.  3:24-bk-1122-BAJ and  3:24-bk-1128-BAJ |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |
| | ) | Jointly Administered Under Case No. 3:24-bk-1128-BAJ |
| _____ | ) | |

**JOINT CHAPTER 11 PLAN OF REORGANIZATION**

**(November 14, 2024)**

Richard R. Thames, Esq.
**THAMES | MARKEY**
50 North Laura Street, Suite 1600
Jacksonville, Florida 32202
(904) 358-4000
rrt@thamesmarkey.law

Attorneys for the Debtors

---

[1]  The Federal Employer Identification Number of the Debtor is 47-4472442.  The principal address of the Debtor is 2300 Maitland Center Parkway, Suite 306, Maitland, Florida 32751.

## Article I

## Introduction

Debtors, Tijuana Flats Restaurants, LLC and Tijuana Flats #176, LLC (collectively, "Tijuana Flats" or "Debtors"), propose this Joint Chapter 11 Plan of Reorganization (the "Plan") pursuant to the provisions of 11 U.S.C. § 1123.

## Article II

## Definitions

Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in this Plan. Such meanings shall be equally applicable to both the singular and plural forms of such terms. Any term used in capitalized form that is not defined in this Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning ascribed to such term in the Bankruptcy Code or Bankruptcy Rules. The rules of construction set forth in § 102 of the Bankruptcy Code shall apply in construction of this Plan.

**2.1    Administrative Claims Bar Date.** The date established by the Court for filing Administrative Expense Claims.

**2.2    Administrative Expense.** Means (a) any cost or expense of administration of the Bankruptcy Case under § 503(b) of the Bankruptcy Code including, but not limited to, any such cost or expense constituting (1) an actual and necessary post-petition cost and expense of preserving the Estate or operating the business of Debtors, (2) a post-petition cost, indebtedness or contractual obligation duty and validly incurred or assumed by Debtors in the ordinary course of business, (3) a payment that is to be made under this Plan to cure defaults on Executory Contracts and Unexpired Leases, and (4) compensation or reimbursement of an expense to the extent allowed by the Bankruptcy Court under §§ 330(a) or 331 of the Bankruptcy Code, and (b) any fee or charge assessed against the Estate under 28 U.S.C. § 1930.

**2.3    Allowed Claim.** A right against the Debtors within the meaning of § 101(5) in respect of which a proof of claim has been filed with the Court within the period of limitation fixed by Rule 3003 or scheduled in the list of creditors prepared and filed with the Court pursuant to Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, and in either case as to which no objection as to allowance or amount thereof has been raised within the applicable period of limitation fixed by Rule 3001 or an order of the Court or local rule, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari is pending. Unless otherwise specified in the Plan or in a

Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include (a) interest on the amount of such Claim accruing from and after the Filing Date, (b) punitive or exemplary damages or (c) any fine, penalty or forfeiture.

**2.4    Allowed Amount.**  The dollar amount in which a Claim is allowed.  No amount shall be allowed for or on account of punitive damages, penalties or post-petition interest on account of any Claim except as otherwise expressly specified in this Plan or provided by Final Order of the Bankruptcy Court.

**2.5    Allowed Interest.**  A right against Debtors or an equity security holder of the Debtors in respect of which a proof of interest has been filed with Court within the applicable period of limitation fixed by Rule 3003 or scheduled in a list of equity security holders prepared or filed with the Court pursuant to Rule 1007(b) and in either case as to which no objection as to allowance or amount thereof has been raised within the applicable period of limitation fixed by Rule 3001 or an order of the Court or local rule, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari is pending.

**2.6    Allowed Secured Claim.**  An Allowed Claim against the Debtors for which a claimant asserts and is determined to hold a valid, perfected and enforceable lien, security interest or other interest of encumbrance in property in which the Debtors had an interest and which is not otherwise subject to avoidance or the equitable powers of the Bankruptcy Court under applicable bankruptcy law or non-bankruptcy law, but in any event only to the extent of the value, determined in accordance with § 506(a) of the Bankruptcy Code, of the claimant's interest in the Debtors' interest in the property. An allowed Secured Claim shall not include post-petition attorney fees and costs unless such fees and costs have been approved and allowed by Final Order prior to the Confirmation Date.

**2.7    Allowed Unsecured Claim.**  An Allowed Claim for which a claimant has not asserted or is determined by a Final Order not to hold an Allowed Secured Claim or a Claim entitled to priority under the Bankruptcy Code.

**2.8    Avoidance Actions.**  Any and all avoidance, recovery, subordination or other actions or remedies that may be brought on behalf of the Debtors, or their Estates under the Bankruptcy Code or applicable non bankruptcy law, including, without limitation, actions or remedies under §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.

**2.9    Ballot.**  The form or forms distributed to claimants in impaired classes on which such persons may indicate the acceptance or rejection of the Plan.

**2.10    Bankruptcy Code.**  Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as may be amended from time to time.

**2.11    Bankruptcy Court.**  The United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division.

**2.12   Bankruptcy Rules.**   The Federal Rules of Bankruptcy Procedure, as adopted by the Supreme Court of the United States pursuant to 28 U.S.C. § 2075, and the Local Bankruptcy Rules as adopted by the Bankruptcy Court for the Middle District of Florida.

**2.13   Bar Date.**   The date fixed by court order for filing proofs of claim or interests.  The Bar Date in this case is June 28, 2024, for non-governmental entities, and October 16, 2024, for governmental agencies [Docket No. 27].

**2.14   Causes of Action.**   Without limitation, any claim, interest, damage, remedy, cause of action, controversy, demand, right, right of setoff, action, cross claim, counterclaim, recoupment, claim for breach of duty imposed by law or in equity, action, Lien, indemnity, contribution, reimbursement, guaranty, debt, suit, class action, third-party claim, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, or franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, direct or indirect, choate or inchoate, liquidated or unliquidated, suspected or unsuspected, disputed or undisputed, secured or unsecured, assertable or existing directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, under the Bankruptcy Code or applicable non-bankruptcy law, or pursuant to any other theory of law. For the avoidance of doubt, Causes of Action include: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest claims or interests; (c) claims pursuant to §§ 362, 510, 542, 543, 544, 545, 546, 547, 548, 549, 550, or 553 of the Bankruptcy Code or similar non-U.S. or state law; and (d) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

**2.15   Chapter 11 Cases.**   The Debtors' proceedings under Chapter 11 of the Bankruptcy Code pending before the Court.

**2.16   Claim.**   A right against either or both of the Debtors within the meaning of § 101(5) of the Bankruptcy Code, including any right to payment or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against Debtors in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, mature, unmatured, disputed, undisputed, legal, secured or unsecured.

**2.17   Class.**   A category of Claims or Interests, as classified in this Plan pursuant to § 1122(a) of the Bankruptcy Code.

**2.18   Confirmation.**   The entry of a Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

**2.19    Confirmation Date.**  The date upon which the Bankruptcy Court, pursuant to § 1129 of the Bankruptcy Code, enters an order confirming the Plan in accordance with the appropriate provisions of Chapter 11 of the Bankruptcy Code.

**2.20    Confirmation Order.**  The order entered by the Bankruptcy Court confirming the Plan.

**2.21    Consummation.**  The occurrence of the Effective Date.

**2.22    Debtors.**  Tijuana Flats Restaurants, LLC and Tijuana Flats #176, LLC.

**2.23    Disclosure Statement.**  The Disclosure Statement filed with the Court, including exhibits and any supplements, amendments or modifications thereto, prepared pursuant to 11 U.S.C. §§ 1125(a) and 1126(b) and Rule 3018(b) for solicitation and acceptance of this Plan.

**2.24    Disputed Claim.**  A Claim that has not been allowed by a Final Order of the Court as to which (a) a Proof of Claim has been filed with the Court, or is deemed filed under applicable law or order of the Court and (b) an objection to the allowance thereof has been or may be filed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Court and any such objection has not been (1) withdrawn, (2) overruled or denied in whole or part by a Final Order of the Court or (3) granted in whole or part by a Final Order of the Court.  For purposes of this Plan, a Claim that has not been allowed by a Final Order of the Court shall also be considered a "Disputed Claim", whether or not an objection has been or may be filed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, if (i) the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Schedules, (ii) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (iii) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated, (iv) no corresponding Claim has been scheduled in the Schedules or (v) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof.

**2.25    Distribution.**  Any distribution by the Debtor(s) to a holder of an Allowed Claim.

**2.26    Distribution Record Date.**  The Confirmation Date.

**2.27    Effective Date.**  The Effective Date of the Plan shall be the first day following the date upon which (a) the Confirmation Order is no longer subject to rehearing, appeal or certiorari proceedings, and (b) all conditions precedent to the occurrence of the Effective Date set forth in Article XIII of this Plan have been satisfied or waived in accordance with Section 13.2 of this Plan, and as identified in a notice filed in the Bankruptcy Case by the Debtors or the Reorganized Debtors.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

**2.28    Entity.**  "Entity" shall have the meaning ascribed by § 101(15) of the Bankruptcy Code.

**2.29    (The) Equity Contribution.**  The contribution being made by Flatheads, LLC to fund the Plan, as described in Article VI.

**2.30    Estate or Estates.**  The estates of the Debtors in these Chapter 11 cases, created pursuant to § 541 of the Bankruptcy Code.

**2.31    Exculpated Parties.**  Collectively, means, and in each case in their capacities as such: (i) the Debtors, (ii) all managers, officers and directors of the Debtors, and (iii) the Debtors' professionals, including counsel, accountants and other agents.

**2.32    Executory Contract or Unexpired Lease.**  A contract or lease to which the Debtors, individually or jointly, are a party that is subject to assumption, assumption and assignment, or rejection under § 365 of the Bankruptcy Code, including contracts or leases assumed or inherited by Restaurants, LLC as a matter of law as a result of its merger with various subsidiaries on April 15, 2024.

**2.33    Final Order.**  An order or judgment of the Court that has not been reversed, modified, amended or stayed, and the time for appeal from which to seek review or certiorari or rehearing of which has expired, and as to which no appeal, review or rehearing are pending, and has become conclusive of all matters adjudicated thereby and is in full force and effect; provided, however, that the order or judgment shall not fail to be deemed a Final Order solely because of the possibility that a motion, pursuant to Federal Rule of Civil Procedure 60, which is incorporated by Rule 9024, may be filed with respect thereto.

**2.34    Flatheads.**  Flatheads, LLC, the sole member of the Debtors.

**2.35    General Unsecured Claims.**  Any claim other than an Administrative Expense, Priority Claim or a Secured Claim and includes (a) the deficiency portion of an undersecured Claim, (b) the Claims of Insiders, and (c) any Claims for contract or lease rejection damages.

**2.36    Holder.**  Any Entity holding a Claim against Debtors.

**2.37    Impaired.**  A class of Claims or Interests that is impaired within the meaning of § 1124 of the Bankruptcy Code.

**2.38    Initial Distribution Date.**  The date that is ninety (90) days after the Effective Date, unless extended by order of the Bankruptcy Court.

**2.39    LCS2022.**  LCS2022, LLC, the holder of an $18,815,190 Claim against the Debtors, secured by a blanket lien on all assets of the Debtors.

**2.40**   **Lien.**  The meaning set forth in § 101(37) of the Bankruptcy Code.

**2.41**   **Person**.   An individual, partnership, corporation, joint-stock company, unincorporated company or association, business trust, limited partnership or other business Entity.

**2.42**   **Petition Date.**   April 19, 2024, the date on which Debtors filed their voluntary petitions for reorganization.

**2.43**   **Plan.**  This Joint Plan of Reorganization in its present form or as may be amended or supplemented.

**2.44**   **Priority Claims.**  Any pre-petition Claim entitled to priority pursuant to § 507(a) of the Bankruptcy Code other than Administrative Expenses.

**2.45**   **Priority Tax Claim.**  A Claim arising under federal, state or local tax laws that is entitled to priority in payment pursuant to § 507(a)(8) of the Bankruptcy Code.

**2.46**   **Proof of Claim.**  Any proof of claim filed with the Court with respect to Debtors pursuant to Rules 3001 or 3002.

**2.47**   **Proof of Interest.**  Any proof of interest filed with the Court with respect to Debtors pursuant to Rule 3002.

**2.48**   **Property.**  The real and personal property (both tangible and intangible) owned by the Debtors.

**2.49**   **Reorganized Debtors.**  The Debtors, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date, unless otherwise dissolved pursuant to the Plan.

**2.50**   **Restaurants, LLC.**  Tijuana Flats Restaurants, LLC.

**2.51**   **Schedules.**  The schedules, as amended, of assets and liabilities, lists and statements of financial affairs and Executory Contracts filed with the Bankruptcy Court by Debtors under Rule 1007.

**2.52**   **Secured Claim.**  The claim of any creditor who holds a Lien, security interest or other security as that term is defined by § 101(49)(A) of the Bankruptcy Code and which has been properly perfected by the applicable law and determined in accordance with Section 506 of the Bankruptcy Code with respect to the property owned by Debtors.

**2.53**   **Secured Creditor.**  Any creditor that is a holder of a Secured Claim.

**2.54**　**Undefined Term.**　A term used in the Plan and not defined herein but that is defined in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure has the meaning given to that term in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure.

**2.55**　**Unimpaired.**　With respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Impaired within the meaning of § 1124 of the Bankruptcy Code.

**2.56**　**Unsecured Creditor.**　Any creditor that is a holder of an Unsecured Claim.

## Article III

## Construction

Unless otherwise specified, all section, article and exhibit references in the Plan are to the respective section in, article of, or exhibit to the Plan, as the same may be amended, waived, or modified from time to time.　The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number and vice-versa, and words denoting one gender shall include the other gender. As to contested matters, adversary proceedings, and other actions or threatened actions, this Plan and the Disclosure Statement shall not be construed as a stipulation or admission, but rather, as a statement made in settlement negotiations.

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed hereunder.

## Article IV

## Classification and Treatment of Claims and Interests

The table below summarizes the classification of Claims against and Interests in the Debtors for all purposes under this Plan, including voting, confirmation and distributions.　In accordance with § 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, Professional Fee Claims and Priority Claims, and such Claims shall be paid in the manner described in Article V below.

This Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.　A Claim or Interest is in a

particular Class, other than for voting purposes, only to the extent that any such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

| Class | Creditor | Status | Voting Rights |
|-------|----------|--------|---------------|
| N/A | Administrative | N/A | No |
| N/A | Priority | N/A | No |
| 1 | LSC2022, LLC | Impaired | Yes |
| 2 | General Unsecured Claims of Restaurants, LLC | Impaired | Yes |
| 3 | General Unsecured Claims of Tijuana Flats #176, LLC | Impaired | Yes |
| 4 | Equity Interests | Unimpaired | No |

## Article V

## Treatment of Administrative, Professional Fee and Priority Claims

Unless otherwise agreed by the Holder of an Administrative, Professional Fee or Priority Claim, such Claims shall be paid as follows:

**5.1    Administrative Claims.**  Subject to the provisions of §§ 328, 330(a) and 331 of the Bankruptcy Code, and except as provided below in Section 5.3 of this Plan, Debtors shall pay each Holder of an Allowed Administrative Claim the full unpaid amount of such Allowed Administrative Claim in Cash: (i) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (ii) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter; (iii) at such later time as may be agreed upon by such Holder and the Debtors; or (iv) at such time and upon such terms as are set forth in a Final Order.  Any party asserting an Administrative Claim not otherwise agreed to by the Debtors or previously allowed by order of the Bankruptcy Court must file such Claim on or before the Administrative Claim Bar Date.

Unless modified by agreement of the parties, US Foods' Administrative Expense Claim shall be paid in the manner specified in the Order Granting Debtors' Motion for Approval of Postpetition Credit Agreement with US Foods, Inc. entered July 18, 2024 [Docket No. 291].

**5.2    Professional Fee Claims.**    Professionals or other Persons asserting a Professional Fee Claim for services rendered before the Effective Date must file and serve on Debtors, and such other Persons who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Professional Fee Claim no later than thirty (30) days after the Effective Date (the "Professional Fee Bar Date") or such other earlier time as may be established by the Bankruptcy Court.    Professional Fee Claims shall be paid (i) on the date such Professional Fee Claim is Allowed or as soon as practicable thereafter; (ii) at such later time as may be agreed upon by such Holder and Debtors; or (iii) at such time and upon such terms as are set forth in a Final Order.

**5.3    Ordinary Course Liabilities.**    Administrative Claims based on liabilities incurred by the Debtors in the ordinary course of their business and reflected on their books and records, including Administrative Claims of governmental units for taxes, will, to the extent not paid during the pendency of the Chapter 11 Case, be paid by the Debtors or Reorganized Debtors pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims, without any further action by the Holders of such Administrative Claims.    Holders of Administrative Claims based on liabilities incurred by Debtors in the ordinary course of their business, excluding Administrative Claims of governmental units for taxes, will not therefore be required to file or serve any request for payment of such Administrative Claims.    The Holder of a postpetition Claim arising under an Executory Contract or Unexpired Lease rejected or proposed to be rejected during the pendency of the Chapter 11 Cases will be required to file formal applications for the allowance of its Administrative Claims by the Administrative Expense Claims Bar Date.

**5.4    Payment of Statutory Fees.**    All fees payable pursuant to Article 1930 of Title 28 of the United States Code assessed against the Debtors' estates shall be paid in full by the Debtors as they become due and owing through the entry of a Final Decree.

**5.5    Priority Claims.**    Unless otherwise agreed by the Debtors and the Priority Claim Holder, Allowed Priority Claims, including Priority Tax Claims, shall be paid by the Debtors or Reorganized Debtors in full in equal monthly installments payable within sixty (60) months of the Petition Date as provided in § 1129(a)(9)(C) of the Bankruptcy Code.    Payments shall be made on or before the 15th of each month (or the next business day if the 15th of the applicable month is a weekend or holiday), with the initial installment being paid on the latter of the Initial Distribution Date or the date such Priority Tax Claim is determined.    Interest shall accrue on Priority Claims at the statutory rate, where applicable.    Any penalties thereon shall be treated as General Unsecured Claims.    Priority Claims subject to dispute or objection shall receive no distribution until such objection or dispute is resolved by Final Order.    Penalties associated with any Priority Tax Claim before the Effective Date shall be treated and paid as General Unsecured Claims.

## Article VI

## Treatment of Impaired Classes

### 6.1    Class 1 – LSC2022, LLC

(a)    Classification:  Class 1 consists of the Allowed Secured Claim of LSC2022, LLC ("LSC2022"), which holds a blanket lien on all assets owed by the Debtors to secure an indebtedness of approximately $18,815,190.  The going-concern value of the collateral securing LCS2022's Claim has an agreed value of $16,000,000, which shall constitute LCS2022's Allowed Secured Claim.  The balance of LCS2022's Allowed Claim shall be treated as a General Unsecured Claim.

(b)    Impairment and Voting:  Class 1 is Impaired and entitled to vote to accept or reject this Plan.

(c)    Treatment:  LCS2022's Allowed Secured Claim shall accrue interest at the Wall Street Journal Prime Rate determined and fixed as of the Confirmation Date following entry of the Confirmation Order, and shall be paid as follows:

   i.    Commencing on July 1, 2025 and continuing on the first day of each month thereafter for a period of one (1) year, LCS2022 shall receive monthly interest only payments on account of its Allowed Secured Claim;

   ii.    Commencing on July 1, 2026, and continuing on the first day of each month thereafter, LCS2022 shall receive principal and interest payments on account of its Allowed Secured Claim based on a twenty (20) year amortization; and

   iii.    On June 30, 2028, the remaining principal balance of LCS2022's Allowed Secured Claim and all accrued and outstanding interest shall be due and payable in full.

Debtors may obtain a six (6) month deferral of the foregoing payments by making an election to do so on or before June 1, 2025.  In the event of such election, the principal balance of LCS2022's Allowed Secured Claim shall be increased by one percent (1%).

LCS2022 shall retain its Liens and security interests in the Debtors' assets until its Allowed Secured Claim is paid in full.  LCS2022 shall be entitled to vote its deficiency Claim as a Class 2 and Class 3 General Unsecured Claim.

In the event the Plan is rejected by all junior classes, or this Plan cannot be confirmed in substantially its present form, the Debtors will be sold as a going-concern with LCS2022 retaining the right to credit bid the entirety of its Claim towards acquisition of the Debtors to permit LCS2022 to realize the indubitable equivalent of its Claim, subject

only to an obligation to satisfy all Administrative Claims in full as required by § 1129(a)(9)(A) of the Bankruptcy Code. Any surplus sale proceeds above LCS2022's Secured Claim and Administrative Expenses will be distributed to creditors and parties in interest in accordance with the priorities established by § 507(a) of the Bankruptcy Code.

### 6.2    Class 2 - General Unsecured Claims of Restaurants, LLC

(a)    Classification:  Class 2 consists of General Unsecured Claims against Restaurants, LLC.

(b)    Impairment and Voting:  Class 2 is impaired and entitled to vote to accept or reject this Plan.

(c)    Treatment:  Except to the extent an Allowed General Unsecured Claim against Restaurants, LLC agrees to a less favorable treatment, Class 2 General Unsecured Creditors shall share pro-rata in a lump sum distribution of $200,000 from Restaurants, LLC, payable on the Initial Distribution Date.

### 6.3    Class 3 – General Unsecured Claims of Tijuana Flats #176, LLC

(d)    Classification:  Class 3 consists of General Unsecured Claims against Tijuana Flats #176, LLC.

(e)    Impairment and Voting:  Class 3 is impaired and entitled to vote to accept or reject this Plan.

(f)    Treatment:  Except to the extent an Allowed General Unsecured Claim against Tijuana Flats #176, LLC agrees to a less favorable treatment, Class 3 General Unsecured Creditors shall share pro-rata a lump sum distribution of $5,000 from Tijuana Flats #176, LLC on the Initial Distribution Date.

### 6.4    Class 4 – Equity Interests

(a)    Classification:  Class 4 consists of Equity Interests in the Debtors.

(b)    Impairment and Voting:  Class 4 is deemed to be unimpaired.

(c)    Treatment:  Flatheads, LLC shall retain its equity interest in Restaurants, LLC in exchange for (i) a capital contribution of $205,000 to fund the distributions to Classes 2 and 3, and (ii) a reclassification of its $1,200,000 administrative expense claim as a capital contribution. Class 4 is unimpaired under this Plan and is therefore conclusively presumed to have accepted this Plan pursuant to § 1126(f) of the Bankruptcy Code.

## Article VII

## Treatment of Executory Contracts and Unexpired Leases

**7.1    Assumption and Rejection of Executory Contracts and Unexpired Leases.**  The Debtors intend to assume all of their non-residential real property leases by separate motion(s).

Prior to the Confirmation Hearing, Debtors will move to assume the following Executory Contracts and Unexpired Leases:

| Lessor/Counterparty | Description |
|---|---|
| Amick Farms | Sales Agreement for Chicken |
| Branding Iron – Rochester Meat Co. | Marinated Steak Strips Supplier Agreement |
| Canon Financial Services, Inc. | Copier Lease |
| Certify, Inc. | Subscription Agreement |
| Coca-Cola North America | Beverage Marketing Agreement dated January 1, 2015 |
| Crunchtime! Information Systems | Master License Agreement for Zenput Store Software |
| DailyPay, Inc. | Master Support Agreement for Payroll |
| Dex Imaging, LLC d/b/a Dex MPS | Managed Print Services Agreement dated September 30, 2020 |
| Donation Scout, LLC | Software as a Services Agreement |
| DoorDash, Inc. | DoorDash Fulfillment Drive Addendum dated November 18, 2020 (excluding Voice addendum) |
| Fuze, Inc. | Master Services Agreement for Telephone System |
| Garden Road Capital Advisors, LLC | Contract for Retention of Services relating to possible Visa/Mastercard Interchange Fee Claims |
| Gratuity Solutions, Inc. | Joint User Agreement and Employee Platform Agreement |

| | |
|---|---|
| Great Lakes Cheese Co., Inc. | Contract Agreement for Cheese |
| Grub Hub | Restaurant Marketing and Delivery Commission Agreement |
| InComm Payments | Contract for Distribution of Gift Cards to Retailers |
| Kappa Computer Systems, LLC | Sonicwall Appliance and Subscription License Agreement and Colocation Agreement |
| Land O' Lakes, Inc. | Stable Pricing Program for Cheese |
| Lease Administration Solutions, LLC | Lease Auditing and Services Agreement dated July 7, 2020 |
| MenuTrinfo, LLC | Client Nutritional Agreement |
| Mirus Information Technology Services, Inc. | Application Services Agreement for Business Intelligence System dated March 4, 2020 |
| Motus Operations, LLC | Master Services Agreement for Motor Vehicle Reporting |
| Natural Beef Packing, LLC | Natural Beef Supplier Agreement |
| PlanSource Financial Services, Inc. | Payroll and 401(k) Plan Provider Agreement |
| Portier, LLC (d/b/a UberEATS) | Master Framework Letter Agreement dated January 31, 2018 |
| Punchh, LLC | Master Services Agreement for On-line Ordering |
| Quench USA, Inc. | Service Agreement |
| Radiant Systems, Inc. | Service Agreement for Aloha Insight Hosted Radiant Software dated February 21, 2012 |
| Rarefield Atmosphere, Inc. | Agreement for App-based Streaming Platform |
| Red Book Connect, LLC | HotSchedules Team Mobile App Service Agreement dated May 24, 2019 |
| Restaurant Partners Procurement, LLC | Supply Chain Procurement and Management Contract dated May 17, 2019 |
| Spadea Lignana | Attorney Fee Agreement for Franchise Company |

| | |
|---|---|
| Tipalti, Inc. | Service Agreement for AP System |
| Valutec Card Solutions, LLC | Merchant Agreement dated September 29, 2020 |
| Valutec Card Solutions, LLC | Additional Location Setup Agreement dated January 6, 2021 |
| Vector Security, Inc. | Customer Service Agreement for ISP for Restaurants |
| Visual Lease, LLC | Subscription License Agreement for Lease Management System dated June 26, 2019 |
| Waste Connections of Florida | Trash Removal Services |
| Waste Management, Inc. | Trash Removal Services |
| WCA Waste Corporation | Trash Removal Services |
| Zenput, Inc. | Support and Implementation Agreement for Zenput Platform |

Unless otherwise agreed between the Debtors and the contract counterparts, any "cure" payment associated with the assumption of the foregoing contracts will be paid over twelve (12) months commencing in January 2025.

The following Executory Contracts and Unexpired Leases have been rejected, or will be rejected, prior to the Confirmation Hearing:

| Lessor/Counterparty | Description |
|---|---|
| Datasite, LLC | Statement of Work ("SOW"): Datasite Diligence dated October 23, 2023 |
| DeliverSense LLC | Master Services Agreement dated March 3, 2022 |
| Door Dash, Inc. | Voice Addendum dated June 28, 2023 |
| Endai Corporation | Master Services Agreement dated January 1, 2022 |
| FedEx Office & Print Services, Inc. | U.S. Corporate Account Program Agreement dated September 13, 2013 |
| Granite Telecommunications, LLC | Service Agreement for ISP dated November 16, 2017 |

| | |
|---|---|
| IMG College, LLC | Marketing and Sponsorship Agreement dated July 1, 2020 |
| Inktel Contact Center Solutions, LLC | Master Services Agreement and Statement of Work dated March 7, 2023 |
| Jupiter Stadium, Ltd. d/b/a Roger Dean Chevrolet Stadium | Sponsorship Agreement dated February 23, 2023 |
| Knox Sports Marketing, Inc. | Sports Sponsorship Agency Agreement dated February 27, 2020 |
| Loews Portofino Bay Hotel at Universal Orlando | Booking and Meeting Space Contract dated August 4, 2023 |
| Party Corp., The | Casino Night Contract for November 7, 2024 |
| Push, Inc. | Marketing and Content Development Agreement dated March 1, 2023 |
| Radius Networks, Inc. | Software as a Service Agreement dated July 10, 2020 |
| Seminole Sports Properties, LLC | Marketing and Sponsorship Agreement dated July 1, 2020 |
| Service Management Group, LLC | Software as a Service Agreement |
| Sprout Social, Inc. | Service Order dated September 29, 2021 |
| Universal City Development Partner | Event Agreement |
| Worldwide Express | |

The Debtors have not yet made the decision whether to assume or reject the following contracts and leases:

| Lessor/Counterparty | Description |
|---|---|
| Mobo Systems, Inc. | Master Services Agreement dated May 16, 2019 |
| NCR Corporation | Master Agreement for Point of Sale System dated June 21, 2021 |
| Thinking Phone Networks, Inc. | Master Services Agreement for Phones in Restaurant Locations |
| US Foods, Inc. | Master Distribution Agreement dated April 3, 2020, as amended |

| Vaco Orlando, LLC | Client Services Agreement |
|---|---|

A decision on whether to assume or reject the foregoing contracts will be made prior to the Confirmation Hearing.

Any Executory Contract or Unexpired Lease which is not expressly assumed shall be deemed rejected upon entry of the Confirmation Order. Notwithstanding such rejection, the Debtors may, at their option, continue to receive the benefits of such rejected Executory Contract or Unexpired Lease by continuing to make regular monthly or periodic payments required thereunder without the obligation to cure any prepetition default.

Rejection of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the applicable Debtor(s) thereunder. The Reorganized Debtors expressly reserve and do not waive any right to receive any continuing obligation of a counterparty to provide outstanding cash payments, warranties or continued maintenance obligations on any goods previously leased or purchased by the Debtors.

Unless otherwise provided in this Plan or the Confirmation Order, each assumed Executory Contract or assumed Unexpired Lease shall include all modifications, supplements, restatements or other agreements that in any manner affect such Executory Contracts or Unexpired Leases. The renewal of any Executory Contract or Unexpired Lease following its postpetition expiration shall constitute a novation and extinguishment of the prepetition contract, with the renewal contract replacing the prepetition contract in its entirety without the necessity of curing any pre or postpetition arrearage or default.

In the event any license granted to the Debtors (or any of the subsidiaries merged into the Debtors prior to the Petition Date) is considered to be an Executory Contract, such license shall be deemed to have been assumed pursuant to § 365 of the Bankruptcy Code upon confirmation of the Plan.

Debtors may change the designation of the Executory Contracts and Unexpired Leases identified above from being assumed or rejected, as applicable, and may designate additional Executory Contracts and Unexpired Leases to be assumed or rejected, as applicable. The failure to identify an Executory Contract or Unexpired Lease in this Plan or in the accompanying Disclosure Statement shall not operate as a waiver of the Debtors' rights to assume or reject such omitted contracts.

**7.2    Insurance Policies.** The Debtors do not believe that the Insurance Policies issued to, or insurance agreements entered into prior to the Petition Date, constitute Executory Contracts. To the extent that such Insurance Policies or agreements are considered to be Executory Contracts, then, notwithstanding anything contained in this Plan to the contrary, this Plan will constitute a motion to assume such insurance policies and agreements, and, subject to the entry of the Confirmation Order will constitute approval

of such assumption, pursuant to § 365(a) of the Bankruptcy Code. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to each such insurance policy or agreement.

       **7.3**    **Alcoholic Beverage Licenses.** All food and alcoholic beverage licenses issued to the Debtors or to any of the subsidiaries merged into the Debtors prior to the Petition Date shall be deemed property of the estate and assumed without condition upon confirmation of the Plan.

       **7.4**    **Indemnification of Directors and Officers.** The Debtors' indemnification obligations (to the extent such obligations exist) in favor of its officers and directors shall be treated as Executory Contracts under the Plan and deemed assumed as of the Effective Date.

       **7.5**    **Compensation and Benefit Plans; Treatment of Retirement Plans.** Except as expressly provided in the Plan or order of the Bankruptcy Court, all of the Debtors' programs, plans, agreements and arrangements subject to §§ 1114 and 1129(a)(13) of the Bankruptcy Code, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance plan, incentive plans, life, accidental death and dismemberment insurance plans, and employment, severance, salary continuation and retention agreements entered into before the Petition Date and not since terminated, will be deemed to be and will be treated as though they are Executory Contracts assumed under the Plan, and the Debtors' obligations under such programs, plans, agreements and arrangements will survive confirmation of the Plan. In addition, pursuant to the requirements of § 1129(a)(13) of the Bankruptcy Code, the Plan provides for the continuation of payment by the Debtors of all "retiree benefits" as defined in § 1114(a) of the Bankruptcy Code at previously established levels.

       **7.6**    **Claims Based on Rejection of Executory Contracts or Unexpired Leases.** Claims created by the rejection of Executory Contracts and Unexpired Leases or the expiration or termination of any Executory Contract or Unexpired Lease prior to the Effective Date, must be filed with the Bankruptcy Court and served on the Reorganized Debtors no later than thirty (30) days after rejection of the Executory Contract or Unexpired Lease. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtors, the Reorganized Debtors, the Estate, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article XI. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article VI.

**7.7**    **Reservation of Rights.**  Nothing contained herein shall constitute an admission by Debtors that any such contract or lease is in fact an executory contract or unexpired lease or that Debtors have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, Debtors shall have thirty (30) days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

## Article VIII

## Means of Implementation

**8.1**    **Means of Implementation.**  The Plan will be implemented and funded from cash on hand of the Reorganized Debtors, the continued operations of the Debtors following the Effective Date, the post-confirmation credit facility described below, recoveries on Avoidance Actions or Causes of Action, and a contribution of $205,000 from Flatheads, LLC.

**8.2**    **Post-Confirmation Credit Facility.**  LCS2022 shall provide the Debtors with an exit loan facility in the amount of $1,000,000.  Advances under the exit loan facility shall bear interest at the Wall Street Journal Prime Rate determined as of the Confirmation Date, be secured by a blanket lien on all assets owned by the Debtors on a pari-passu basis with LCS2022's Allowed Secured Claim, and shall be evidenced by such promissory notes, security agreements and other customary debt instruments as LCS2022 may reasonably require.  The amount of the exit loan facility may be increased in LCS2022's sole discretion without the necessity of further approval of the Bankruptcy Court.

**8.3**    **Vesting of Assets.**  Except as otherwise provided in the Plan or the Confirmation Order, upon the Effective Date, all property of the Estate, including (without limitation) all Causes of Action, licenses, trade names, trademarks and intellectual property, shall vest in the Reorganized Debtors free and clear of all liens, Claims, interests and encumbrances except those held by taxing authorities and LCS2022.  On and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, or dispose of their property without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**8.4**    **Corporate Existence.**  On or after the Effective Date, each Reorganized Debtor, as applicable, shall continue to exist as a separate limited liability company with all the powers of a limited liability company pursuant to the applicable law in the jurisdiction in which the particular Debtor is incorporated or organized.  Following the Effective Date, the Articles of Organization, Operating Agreement, Bylaws and other governing documents for the Reorganized Debtors may be amended or modified without supervision or approval of the Bankruptcy Court.

**8.5** **Corporate Action.** Each of the matters provided for by the Plan involving the corporate structure of the Debtors or corporate, financing or related actions to be taken by or required of the Reorganized Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the Plan (except to the extent otherwise indicated), and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified as of the Effective Date in all respects without any requirement of further action by Holders of Claims or Interests, the Managers of the Debtors or any other Entity. The Reorganized Debtors shall enter into such agreements and amend its corporate governance documents to the extent necessary to implement the terms and conditions of the Plan.

**8.6** **Court Authorization.** The entry of the Confirmation Order shall constitute authorization for Debtors and Reorganized Debtors, as applicable, to execute such further documents or to cause to be taken all actions necessary or appropriate to consummate and implement the provisions herein prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court. All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the members or managers of Debtors.

**8.7** **Exoneration of Certain Parties.** Provided that the respective affiliates, officers, directors, representatives, attorneys, financial advisors, and agents of Debtors are not found by a final, non-appealable order of a court of competent jurisdiction to have failed to act in good faith, they shall not be liable to any Person with respect to any action, forbearance from action, decision, or exercise of discretion taken during the period from the Petition Date through the Effective Date in connection with: (a) the operation of Debtors, (b) the implementation of any of the transactions provided for, related to, or contemplated in, the Plan, or (c) the administration of the Plan, other than for willful misconduct or gross negligence. Debtors and their respective affiliates, officers, directors, representatives, attorneys, financial advisors, and agents may rely upon the opinions and advice of counsel, accountants and other experts or professional persons employed by Debtors and such reliance shall presumptively establish good faith.

## Article IX

## Provisions Governing Distributions and Allowance of Claims

**9.1** **Allowance of Claims.** After the Effective Date, the Reorganized Debtors shall have and retain all rights and defenses which the applicable Debtor had immediately prior to the Effective Date. No Claim shall be deemed an Allowed Claim unless and until such Claim is Allowed under the Plan or under any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), when such order becomes a Final Order.

**9.2** **Time to File Objections to Claims.** Any objections to Claims shall be filed on or before the later of (i) sixty (60) days after the entry of the Confirmation Order, and (ii) such other time as may be fixed by the Bankruptcy Court.

**9.3** **Distributions.** The Reorganized Debtors shall administer all distributions required under this Plan, subject to the following conditions:

**i.** There shall be no distribution on account of any Disputed Claim until such objection or dispute is resolved by Final Order. In accordance with Section 9.4 of the Plan, Debtors shall, however, reserve funds to make the proportionate distribution to such creditors until such time as all claim objections have been finally determined. Except as provided in Section 9.10, all funds reserved on account of Disallowed Claims shall be distributed pro-rata to the holders of Allowed Unsecured Claims at the conclusion of the claim objection process. Debtors may, in their sole discretion, delay making the initial distribution if they expect resolution of a Disputed Claim within a reasonable time.

**ii.** A number of Claims have been filed with the Court and with the Debtors' noticing agent, Stretto, Inc. There shall only be one distribution on account of such Claims.

**iii.** Pursuant to § 502(d) of the Bankruptcy Code, no payments shall be made to any Entity from which property is recoverable under §§ 542, 543, 550 or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under §§ 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, unless such Entity or transferee has paid the amount, or turned over any such property from which such Entity or transferee is liable under §§ 522(i), 542, 543, 550 or 553 of the Bankruptcy Code. The Claim of any recipient of a payment avoidable under §§ 542, 543, 550 or 553 of the Bankruptcy Code who fails to pay or turnover the amount of the payment to Debtors within sixty (60) days of a judgment or order avoiding the transfer or requiring such turnover shall be extinguished and forever barred.

**9.4** **Disputed Claim Reserve.**

**i.** **Establishment of Disputed Claim Reserve.** The Debtors shall establish a separate Disputed Claim Reserve for Disputed Claims, to the extent any Disputed Claims exist. The Debtors shall reserve distributions sufficient to provide Holders of Disputed Claims the treatment such Holders would be entitled to receive under this Plan if all such Disputed Claims were to become Allowed Claims.

**ii.** **Maintenance of Disputed Claim Reserve.** The Debtors shall hold distributions in the Disputed Claim Reserve in trust for the benefit of the Holders of Claims ultimately determined to be Allowed. The Debtors shall make such distributions (net of any expenses, including any taxes relating thereto), as provided herein, as such Disputed Claims are resolved by a Final Order, and such distributions will be distributable in respect of such Disputed Claims as such

distributions would have been distributable had the Disputed Claims been Allowed Claims as of the Effective Date.

9.5 **Supplemental Distributions.** To the extent a Claim is Allowed after the Debtors make their initial distribution, the Debtors shall make the distributions required to be made on account of such Claim under this Plan no later than ninety (90) days after such Claim is Allowed. No interest shall accrue or be paid on the unpaid amount of any distribution paid pursuant to this Article IX.

9.6 **Record Date for Distributions.** Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to any Distribution Record Date established by the Court will be treated as the Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by such distribution record date. The Debtors shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date. In making any distribution with respect to any Claim, the Debtors shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the Proof of Claim filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that are known to the Debtors as applicable, as of the Distribution Record Date.

9.7 **Delivery of Distributions.**

i. **General Provisions.** Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, distributions to the Holders of Allowed Claims shall be made by the Reorganized Debtors. Except as otherwise provided herein, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by Debtors. Distributions to Holders of Allowed Claims will be made at the address of each Holder as set forth in the Schedules, unless superseded by the address set forth on Proofs of Claim Filed by such Holder. Distributions under this Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth herein. Neither the Debtors nor their respective professionals shall incur any liability whatsoever on account of any distributions under this Plan except for gross negligence, willful misconduct or fraud.

ii. **Undeliverable Distributions.** If any distribution is returned as undeliverable, the Debtors may, in their discretion, make such efforts to determine the current address of the Holder of the Claim with respect to which the distribution was made as the Debtors deem appropriate, but no distribution to any Holder shall be made unless and until the Debtors have determined the then-current address of the Holder, at which time the distribution to such Holder shall be made to the Holder (without interest). Amounts in respect of any undeliverable distributions made by the Debtors shall be returned to, and held in trust by, Debtors until the distributions

are claimed or are deemed to be unclaimed property under § 347(b) of the Bankruptcy Code. The Debtors shall have the discretion to determine how to make distributions in the most efficient and cost-effective manner possible; *provided, however*, that their discretion may not be exercised in a manner inconsistent with any express requirements of this Plan.

      **iii.**      **Unclaimed Property.**  Except with respect to property not Distributed because it is being held in the Disputed Claim Reserve, distributions that are not claimed by the expiration of six (6) months from the Initial Distribution Date or the date of a supplemental distribution applicable to such distribution, shall be deemed to be unclaimed property under § 347(b) of the Bankruptcy Code and shall vest or revest in the Reorganized Debtors, and the Claims with respect to which those distributions are made shall be automatically canceled. After the expiration of such six (6) month period, the Claim of any Entity to those distributions shall be discharged and forever barred. Nothing contained in this Plan shall require the Debtors to attempt to locate any Holder of an Allowed Claim.

     **9.8**    **Time Bar to Cash Payments by Check.**  Checks issued by the Reorganized Debtors on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to this section shall be made directly to the Reorganized Debtors by the Holder of the Allowed Claim to whom the check was originally issued. Any claim in respect of such voided check shall be made in writing on or before the later of the first anniversary of the Initial Distribution Date or the date a supplemental distribution was made, as applicable, on which such check was issued. After that date, all Claims in respect of void checks shall be discharged and forever barred and the proceeds of those checks shall revest in and become the property of the Reorganized Debtors as unclaimed property in accordance with § 347(b) of the Bankruptcy Code. All costs for reissuance shall be borne by the Claim Holder.

     **9.9**    **Compliance with Tax Requirements.**  In connection with making distributions under this Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. Each Holder of an Allowed Claim that is to receive a distribution under this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. The Reorganized Debtors may withhold the entire distribution due to any Holder of an Allowed Claim until such time as such Holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Reorganized Debtors to the appropriate authority. If the Holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six (6) months from the date of first notification to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such Holder's distribution shall be treated as an undeliverable distribution.

**9.10    No Payments of Fractional Dollars or De Minimis Amounts.**
Notwithstanding any other provision of this Plan to the contrary, no payment of fractional dollars shall be made pursuant to this Plan.  Whenever any payment of a fraction of a dollar under this Plan would otherwise be required, the actual distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.  Notwithstanding any other provisions of this Plan, the Debtors shall not be required to make distributions of less than $50; and each Claim to which this limitation applies shall be discharged, and its Holder shall be forever barred pursuant to Article XI of the Plan from asserting such Claim against the Debtors or the Reorganized Debtors or their Estates.   In addition, the Debtors shall not be required to make a supplemental distribution pursuant to Section 9.3.i if the aggregate amount of such distribution is less than $25,000.

**9.11    Interest on Claims.**  Except as specifically provided for in this Plan or the Confirmation Order, interest shall not accrue on Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim.  Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for postpetition interest or other similar charges.

**9.12    No Distribution in Excess of Allowed Amount of Claim.**
Notwithstanding anything to the contrary contained in this Plan, no Holder of an Allowed Claim shall receive in respect of that Claim any distribution in excess of the Allowed amount of that Claim.

**9.13    Settlement of Claims, Disputes and Litigation.**  After the Effective Date, the Reorganized Debtors are authorized to resolve or settle any Claim objection, adversary proceeding, contested matter, or pending litigation, in their sole discretion, without further notice and without the necessity of obtaining Bankruptcy Court approval.  All of the aforementioned Claims and objection, estimation and resolution procedures are cumulative and not exclusive of one another.

**9.14    Expungement or Adjustment to Claims Without Objection.**  Any Claim that has been paid, satisfied or superseded may be expunged on the Claims register, and any Claim that has been amended may be adjusted thereon, in both case without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

**9.15    Claims Paid by Third Parties.**  The Debtors shall reduce a Claim, and such Claim shall be disallowed without an objection to such Claim having to be filed and without further notice to, action, order, or approval of the Bankruptcy Court, to the extent the Holder of such Claim receives payment on account of such Claim from a party other than the Debtors.  Further, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtors on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution, to the extent the Holder's total recovery on account of such Claim from the

third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing annualized interest at the federal judgment rate on such amount owed for each Business Day after the two-week grace period specified above until such amount is repaid.

**9.16    Setoff and Recoupment.**  The Debtors may, but shall not be required to, set off against, or recoup from, any Claim and the distributions to be made pursuant to this Plan in respect thereof, any Claims or defenses of any nature whatsoever that Debtors, the Estate may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim under this Plan shall constitute a waiver or release by Debtors or the Estate, of any Claim or right of setoff or recoupment that any of them may have against the Holder of any Claim.

**9.17    Special Provision Regarding Unimpaired Claims.**  Except as otherwise provided in this Plan, nothing shall affect the Debtors' rights and defenses, both legal and equitable, with respect to any unimpaired Claim (including Claims that are Allowed pursuant to this Plan), including, without limitation, all rights with respect to the legal and equitable defenses to setoffs or recoupments against unimpaired Claims, and the Debtors' failure to object to such Claims in the Chapter 11 Cases shall be without prejudice to the Debtors' right to contest or defend against such Claims in (i) any appropriate non-bankruptcy forum as if such Chapter 11 Cases had not been commenced, or (ii) the Bankruptcy Court (such forum to be selected at Debtors' option).

**9.18    Prepayment.**  Debtors and the Reorganized Debtors, as applicable, expressly reserve the right, in their sole discretion, to prepay, in full or in part, any obligation created pursuant to the Plan, and no interest shall accrue with respect to the prepaid portion of such obligation from and after the date of such prepayment. No fees or other charges shall be charged to Debtors as a result of any such prepayment.

**9.19    Allocations.**  Except as expressly provided in this Plan, distributions on account of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to accrued but unpaid prepetition interest.

## Article X

## Modification of the Plan

**10.1    Modification and Amendments.**  Except as otherwise specifically provided in this Plan, subject to certain restrictions and requirements set forth in § 1127 of the Bankruptcy Code and Rule 3019, the Debtors reserve the right to modify this Plan without additional disclosure pursuant to § 1125 of the Bankruptcy Code prior to the Confirmation Date and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan. After the Confirmation Date and

before substantial consummation of the Plan, the Debtors may initiate proceedings in the Court pursuant to § 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in the Plan, any Plan Supplement, the Disclosure Statement, or the Confirmation Order, relating to such matters as may be necessary to carry out the purposes and intent of the Plan.

After the Confirmation Date, but before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan (including any Plan Supplement) without further order or approval of the Court; provided that such adjustments and modifications do not materially and adversely affect the treatment of Holders of Claims or Interests.

**10.2    Effect of Confirmation or Modifications.**  Entry of a Confirmation Order shall mean that all modifications or amendments to this Plan since the solicitation thereof are approved pursuant to § 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Rule 3019.

**10.3    Revocation or Withdrawal of Plan.**  Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to file subsequent plan(s) of reorganization. If the Debtors revoke or withdraw this Plan, or if Confirmation or the Effective Date does not occur, then: (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts and Unexpired Leases affected under this Plan, and any document or agreement executed pursuant to this Plan, shall be deemed null and void; and (3) nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other entity.

## Article XI

## Settlement, Discharge, Release, Effect of Confirmation and Related Provisions

**11.1    Discharge of Claims.**  Pursuant to § 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in this Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created or entered into pursuant to this Plan, the distributions, rights, and treatment that are provided in this Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of all Claims and Causes of Action of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims, including demands, liabilities, and Causes of Action that

arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to § 501 of the Bankruptcy Code; (2) a Claim based upon such debt or right, is Allowed pursuant to § 502 of the Bankruptcy Code; or (3) the Holder of such a Claim has accepted this Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims subject to the occurrence of the Effective Date.

**11.2** **Release.** Except as otherwise expressly provided for in the Plan or in the Confirmation Order, the rights afforded in the Plan and the treatment of all Claims under the Plan shall be in exchange for and in complete satisfaction of all Claims, and the Reorganized Debtors shall be released from any and all claims and Causes of Action whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that such Holders or their estates, affiliates, subsidiaries, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other person claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or other person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estate, the Chapter 11 cases, the restructuring contemplated by this Plan, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim that is treated under this Plan, the business or contractual arrangements or interactions between or among the Debtors, their subsidiaries and the Reorganized Debtors, or the Debtors' in or out-of-court restructuring efforts, intercompany transactions between or among Debtors or an affiliate or subsidiary of the Debtors, the restructuring of any Claim before or during the Chapter 11 cases, the negotiation, formulation, preparation, consummation, or filing of the Disclosure Statement, this Plan, any Plan Supplement and related agreements, instruments, and other documents, the solicitation of votes with respect to this Plan, and all other related documents and agreements, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

**11.3** **No Release of Co-Obligor or Joint Tortfeasor.** No provision of this Plan, including without limitation, any release or exculpation provision, shall modify, release, or otherwise limit the liability of any Entity other than the Releasees and the Exculpated Parties, including without limitation, any Entity that is a co-obligor, guarantor or joint tortfeasor of a Releasee or Exculpated Party or that otherwise is liable under theories of vicarious or other derivative liability.

**11.4** **Exculpation.** Except as otherwise specifically provided in this Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action or Claim whether direct or derivate related to any act or omission in connection with, relating to, or arising out of the Chapter 11 cases, the formulation, preparation, dissemination, negotiation, or filing the Disclosure Statement, this Plan, any Plan Supplement, or any transaction related to the restructuring contemplated by this Plan, any contract, instrument, release, or other agreement or document created or entered into before or during the Chapter 11 cases in connection with the restructuring, the filing of the Chapter 11 cases, the solicitation of votes for the Plan, the pursuit of Confirmation, the pursuit of consummation, the administration and implementation of this Plan, including the issuance of any securities pursuant to this Plan, or the distribution of property under this Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to any of the foregoing, except for Claims related to any act or omission that is determined in a Final Order to have constituted willful misconduct or actual fraud, but in all respects such Exculpated Parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan and the Confirmation Order.

The Exculpated Parties set forth above have, and upon Confirmation of this Plan shall be deemed to have, participated in good faith and in compliance with applicable law with respect to the solicitation of votes and distribution of consideration pursuant to this Plan and, therefore, are not and shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or such distributions made pursuant to this Plan.

**11.5** **INJUNCTION.** EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THIS PLAN OR IN OBLIGATIONS ISSUED PURSUANT TO THIS PLAN (INCLUDING ANY DOCUMENTS EVIDENCING SUCH OBLIGATIONS) FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE DEBTORS, THE REORGANIZED DEBTORS AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, INTEREST OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED, OR TO BE EXCULPATED, PURSUANT TO THIS PLAN OR THE CONFIRMATION ORDER.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THIS PLAN OR IN OBLIGATIONS ISSUED PURSUANT TO THIS PLAN (INCLUDING ANY DOCUMENTS EVIDENCING SUCH OBLIGATIONS), FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS, THE REORGANIZED DEBTORS OR THEIR SUCCESSORS AND ASSIGNS AND THEIR ASSETS AND PROPERTIES ANY OTHER CLAIMS BASED UPON ANY DOCUMENTS, INSTRUMENTS, OR ANY

ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED PRIOR TO THE EFFECTIVE DATE.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THIS PLAN OR IN OBLIGATIONS ISSUED PURSUANT TO THIS PLAN (INCLUDING ANY DOCUMENTS EVIDENCING SUCH OBLIGATIONS), THE RIGHTS AFFORDED IN THIS PLAN AND THE TREATMENT OF ALL CLAIMS IN THIS PLAN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF CLAIMS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS, THE REORGANIZED DEBTORS OR ANY OF THEIR ASSETS OR PROPERTIES.

UNLESS OTHERWISE PROVIDED IN THIS PLAN OR CONFIRMATION ORDER, ALL INJUNCTIONS OR STAYS IN EFFECT IN THE CHAPTER 11 CASE PURSUANT TO §§ 105 OR 362 OF THE BANKRUPTCY CODE OR ANY ORDER OF THE BANKRUPTCY COURT, AND EXTANT ON THE CONFIRMATION DATE (EXCLUDING ANY INJUNCTIONS OR STAYS CONTAINED IN THIS PLAN OR THE CONFIRMATION ORDER) SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE. ALL INJUNCTIONS OR STAYS CONTAINED IN THIS PLAN OR THE CONFIRMATION ORDER SHALL REMAIN IN FULL FORCE AND EFFECT IN ACCORDANCE WITH THEIR TERMS.

NO PERSON OR ENTITY MAY COMMENCE OR PURSUE A CLAIM, INTEREST OR CAUSE OF ACTION OF ANY KIND AGAINST THE DEBTORS OR THE REORGANIZED DEBTORS THAT RELATES TO OR IS REASONABLY LIKELY TO RELATE TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF A CLAIM, INTEREST OR CAUSE OF ACTION RELATED TO THE CHAPTER 11 CASES PRIOR TO THE EFFECTIVE DATE, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, OR FILING OF THE DISCLOSURE STATEMENT, THIS PLAN, ANY PLAN SUPPLEMENT OR ANY TRANSACTION RELATED TO THE RESTRUCTURING CONTEMPLATED BY THIS PLAN, ANY CONTRACT, INSTRUMENT, RELEASE, OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO BEFORE OR DURING THE CHAPTER 11 CASES IN CONNECTION WITH THIS RESTRUCTURING, ANY PREFERENCE, FRAUDULENT TRANSFER, OR OTHER AVOIDANCE CLAIM ARISING PURSUANT TO CHAPTER 5 OF THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION, THE PURSUIT OF CONSUMMATION, THE ADMINISTRATION AND IMPLEMENTATION OF THIS PLAN, INCLUDING THE ISSUANCE OF ANY SECURITIES PURSUANT TO THIS PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THIS PLAN OR ANY OTHER RELATED AGREEMENT, OR UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE RELATED OR RELATING TO ANY OF THE FOREGOING WITHOUT THE BANKRUPTCY COURT (1) FIRST DETERMINING, AFTER NOTICE AND A HEARING, THAT SUCH CLAIM,

INTEREST OR CAUSE OF ACTION REPRESENTS A COLORABLE CLAIM OF ANY KIND AND (2) SPECIFICALLY AUTHORIZING SUCH PERSON OR ENTITY TO BRING SUCH CLAIM, INTEREST OR CAUSE OF ACTION AGAINST ANY SUCH DEBTORS, AND/OR REORGANIZED DEBTORS.

THE BANKRUPTCY COURT WILL HAVE SOLE AND EXCLUSIVE JURISDICTION TO ADJUDICATE THE UNDERLYING COLORABLE CLAIM OR CAUSES OF ACTION. THE INJUNCTION IN THIS PLAN SHALL EXTEND TO ANY SUCCESSORS AND ASSIGNS OF THE DEBTORS AND THE REORGANIZED DEBTORS AND THEIR RESPECTIVE PROPERTY AND INTERESTS IN PROPERTY.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE FOREGOING, THE INJUNCTION DOES NOT ENJOIN ANY PARTY UNDER THIS PLAN, THE CONFIRMATION ORDER, OR OTHER DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE ATTACHED TO THE DISCLOSURE STATEMENT OR INCLUDED IN ANY PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THIS PLAN AND THE CONFIRMATION ORDER FROM BRINGING AN ACTION TO ENFORCE THE TERMS OF THIS PLAN, THE CONFIRMATION ORDER OR SUCH DOCUMENT, INSTRUMENT, OR AGREEMENT (INCLUDING THOSE ATTACHED TO THE DISCLOSURE STATEMENT OR INCLUDED ANY PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THIS PLAN AND THE CONFIRMATION ORDER.

**11.6    Protections Against Discriminatory Treatment.**  Consistent with § 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including governmental units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because the Debtors have been Debtors under Chapter 11 of the Bankruptcy Code, have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or have not paid a debt that is dischargeable in the Chapter 11 Cases.

**11.7    Document Retention.**  On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with its standard document retention policies, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

## Article XII

## Maintenance of Causes of Action

**12.1    Vesting of Causes of Action.**  Except as otherwise provided in this Plan or Confirmation Order, in accordance with § 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtors may hold against any Entity shall vest with the Debtors on the Effective Date, irrespective of whether such Causes of Action are described in the Schedules or the Disclosure Statement accompanying this Plan.  Except as otherwise provided in this Plan or Confirmation Order, after the Effective Date, the Debtors shall have the exclusive right, but not the obligation, to institute, prosecute, abandon, settle or compromise any such Causes of Action, in accordance with the terms of this Plan and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in these Chapter 11 cases.

**12.2    Preservation of All Causes of Action Not Expressly Settled or Released.**  Unless a Cause of Action against a Holder of a Claim or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order), the Reorganized Debtors expressly reserve such Cause of Action for later adjudication by the Reorganized Debtors (including, without limitation, Causes of Action not specifically identified or described in the Plan or elsewhere or of which the Debtors or Reorganized Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors or Reorganized Debtors at this time or facts or circumstances which may change or be different from those the Debtors or Reorganized Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata,* collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan or Confirmation Order, except where such Causes of Action have been released in the Plan or any other Final Order (including the Confirmation Order).  In addition, the Reorganized Debtors expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

No person may rely on the absence of a specific reference in the Plan or Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any available Causes of Action against it.  The Debtors and the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any person whether or not listed in the Plan or Disclosure Statement.

## Article XIII

## Conditions Precedent to the Effective Date of Plan

**13.1    Conditions Precedent.**  The Effective Date shall not occur unless and until the following conditions have been satisfied or waived by the Debtors (a) the Confirmation Order shall have been entered, in form and substance acceptable to the Debtors and LCS2022, and (b) the Confirmation Order shall have become a Final Order.

**1.**    The Bankruptcy Court shall have entered the Confirmation Order containing findings of fact and conclusions of law satisfactory to the Debtors and LSC2022, which Confirmation Order shall not be subject to any stay or subject to an unresolved request for revocation under § 1144 of the Bankruptcy Code and shall be a Final Order, which Confirmation Order shall include among other things:

(i)    all provisions, terms and conditions hereof are approved;

(ii)    all Executory Contracts or Unexpired Leases assumed by the Debtors during the Chapter 11 cases including under the Plan shall remain in full force and effect for the benefit of the Reorganized Debtors or their assignee notwithstanding any provision in such contract or lease (including those described in §§ 365(b)(2) and (f) of the Bankruptcy Code) that prohibits such assignment or transfer or that enables, permits or requires termination of such contract or lease; and

(iii)    except as expressly provided in the Plan or the Confirmation Order, the Debtors are discharged effective upon the Confirmation Date, subject to the occurrence of the Effective Date, from any "debt" (as that term is defined in § 101(12) of the Bankruptcy Code), and the Debtors' liability in respect thereof shall be extinguished completely, whether such debt (i) is reduced to judgment or not, liquidated or unliquidated, contingent or noncontingent, asserted or unasserted, fixed or unfixed, matured or unmatured, disputed or undisputed, legal or equitable, or known or unknown, or (ii) arose from (a) any agreement of the Debtors that has either been assumed or rejected in the Chapter 11 case or pursuant to the Plan, (b) any obligation the Debtors incurred before the Confirmation Date or (c) any conduct of the Debtors prior to the Confirmation Date, or that otherwise arose before the Confirmation Date, including, without limitation, all interest, if any, on any such debts, whether such interest accrued before or after the Petition Date.

**2.**    The Bankruptcy Court shall have entered a Final Order approving the Disclosure Statement as containing adequate information within the meaning of § 1125 of the Bankruptcy Code;

**3.**    All payments and transfers to be made on the Effective Date shall be made or duly provided for, and the Debtor shall have sufficient cash on such date to make such payments;

      **4.**      All authorizations, consents and regulatory approvals required, if any, in connection with the Consummation of the Plan shall have been obtained; and

      **5.**      Flatheads, shall have made the Equity Contribution.

    **13.2**    <u>**Waiver of Conditions.**</u>  The conditions to the Effective Date set forth in this Article XIII may be waived, in whole or in part, by the Debtors, without any other notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate this Plan; provided, however, the consideration provided for in Article 13.1 above may not be waived.

    **13.3**    <u>**Substantial Consummation.**</u>  Consummation of this Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

    **13.4**    <u>**Effect of Failure of Conditions**</u>.  If consummation does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by the Debtors, Claims, or interests; (ii) prejudice in any manner the rights of the Debtors, any Holders of Claims or interests, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or interests, or any other Entity, respectively.

**Article XIV**

**Miscellaneous**

    **14.1**    <u>**Immediate Binding Effect.**</u>  Notwithstanding Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of this Plan (including, for the avoidance of doubt, any Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted or rejected this Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in this Plan or the Confirmation Order, each Entity acquiring property under this Plan or the Confirmation Order, and any and all non-Debtors parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and Interests shall be as fixed, adjusted, or compromised, as applicable, pursuant to this Plan and the Confirmation Order, regardless of whether any such Holder of a Claim or Interest has voted on this Plan.

    **14.2**    <u>**Waiver of Stay.**</u>  The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of fourteen (14) days after entry of the order shall be waived by the Confirmation Order. The Confirmation Order shall take effect immediately and shall not be stayed pursuant to the Bankruptcy Code, Rules 3020(e), 6004(h), 6006(d), or 7062 or otherwise.

**14.3    Objection Deadline.** As soon as practicable, but in no event later than sixty (60) calendar days after the Effective Date, unless otherwise ordered by the Bankruptcy Court, objections to Claims shall be filed with the Bankruptcy Court and served upon the holders thereof and the United States Trustee for the Middle District of Florida.

**14.4    Further Action:** Debtors are authorized and directed to execute and deliver all documents and take and cause to be taken all action necessary and appropriate actions to execute and implement the provisions of this Plan.  Debtors shall also be authorized to continue to operate their businesses in all respects during the period between the Confirmation Date and the Effective Date.

**14.5    No Attorneys' Fees.** Unless otherwise agreed by the Debtors, no pre- or post-petition attorneys' fees shall be paid with respect to any Claim or Interest except as specified herein or as Allowed by a Final Order of the Bankruptcy Court prior to the Confirmation Date.

**14.6    Further Assurance.** If at any time the Debtors shall consider or be advised that any further releases or assurances are reasonably necessary or desirable to carry out the provisions hereof and the transactions contemplated herein, the Claim or Interest Holder whose action is required shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions of this Plan.

**14.7    Employment of Professionals.** After Confirmation, the Debtors are authorized to employ such professionals as they deem appropriate and to compensate them without the further approval of the Bankruptcy Court.

**14.8    Default and Opportunity to Cure.** No default under this Plan shall be deemed to have occurred until the Debtors have received written notice of the alleged default.  The Debtors, or either of them individually, shall then have twenty (20) days to cure the alleged default or dispute same.  A default by Tijuana Flats #176, LLC in its payment obligations hereunder shall not be construed as a default for Restaurants, LLC, and vice-versa.  Creditors of Tijuana Flats #176, LLC solely shall have no right to receive payment from Restaurants, LLC, and may only enforce their rights hereunder against Tijuana Flats #176, LLC.

**14.9    Enforcement.** In the event it becomes necessary to initiate litigation to enforce the terms of this Plan, the non-prevailing party shall pay the court costs and attorney's fees of the prevailing party in such enforcement action including, without limitation, all such fees and expenses incurred in negotiations, at trial, on appeal, and in the Bankruptcy Court.

**14.10    Section 1146 Exemption:** Pursuant to § 1146(c) of the Bankruptcy Code, the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, or the revesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated by the Plan,

shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

**14.11   Discrepancies.** In the event of any discrepancy between the terms of this Plan and the Disclosure Statement, the terms of this Plan shall control.

**14.12   Automatic Stay.**   The automatic stay imposed by § 362 of the Bankruptcy Code will remain effective until the Effective Date, at which time the injunction of Article XI shall replace such stay.

**14.13   Notices.**   Any notice hereunder shall be in writing, and if by e-mail or facsimile, shall be effective upon transmission, and if mailed shall be deemed to have been given three days after the date when sent by registered or certified mail, postage prepaid, and addressed as follows:

> Tijuana Flats Restaurants, LLC
> Attn:  Jim Greco, President
> 2300 Maitland Center Parkway, Suite 306
> Maitland, Florida 32751
>
> Richard R. Thames, Esq.
> Thames | Markey
> 50 North Laura Street, Suite 1600
> Jacksonville, Florida 32202
> rrt@thamesmarkey.law

**14.14   Successors and Assigns.**   The duties, rights and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Persons.

**14.15   Entire Agreement.**   Except as otherwise indicated in this Plan (including, for the avoidance of doubt, any Plan Supplement), this Plan, the Confirmation Order, and the applicable documents or other instruments contemplated by this Plan supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan, any Plan Supplement, the Confirmation Order and such documents or other instruments.

**14.16   Deemed Acts.**   Subject to and conditioned on the occurrence of the Effective Date, whenever an act or event is expressed under this Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred without any further act by any party by virtue of this Plan and the Confirmation Order.

**14.17    Nonseverability of Plan Provisions.**  If, prior to Confirmation, any term or provision of this Plan is held by the Court to be invalid, void, or unenforceable, the Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to this Plan and may not be deleted or modified without the Debtors' or Reorganized Debtors' consent, as applicable; and (3) non-severable and mutually dependent.

**14.18    Votes Solicited in Good Faith.**  Upon entry of the Confirmation Order, each of the Exculpated Parties will be deemed to have acted in "good faith" within the meaning of § 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and in a manner consistent with the Disclosure Statement, the Plan, the Bankruptcy Code, the Rules, and all other applicable rules, laws, and regulations in connection with all of their respective activities relating to support and consummation of the Plan, and are entitled to the protections of § 1125(e) of the Bankruptcy Code and all other applicable protections and rights provided in the Plan. Without limiting the generality of the foregoing, upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on this Plan in good faith and in compliance with the Bankruptcy Code and other applicable law, and, pursuant to § 1125(e) of the Bankruptcy Code, any person will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of any securities offered and sold under this Plan, and, therefore, none of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on this Plan or the offer, issuance, sale, or purchase of the securities offered and sold under this Plan.

**14.19    Request for Expedited Determination of Taxes.**  The Debtors shall have the right to request an expedited determination under § 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

**14.20    Waiver or Estoppel.**  Upon the Effective Date, each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in this Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

**14.21  Governing Law.**  Unless a rule of law or procedure is support by federal law (including the Bankruptcy Code or Bankruptcy Rules), the laws of the State of Florida shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan.

## Article XV

## Retention Of Jurisdiction

**15.1  Retention of Jurisdiction.**  Pursuant to §§ 1334 and 157 of Title 28 of the United States Bankruptcy Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to these Chapter 11 case and the Plan, for the purposes of §§ 105(a) and 1142 of the Bankruptcy Code, and for, among other things, the following purposes:

(i)    To hear and determine any and all objections to or applications concerning the allowance, classification, priority, compromise, estimation, or payment of any Claim or Interest;

(ii)    To hear and determine any and all applications for payments of fees and expenses made by any professional pursuant to §§ 330 or 503 of the Bankruptcy Code, or for payment of any other fees or expenses authorized to be paid or reimbursed under the Bankruptcy Code, and any and all objections thereto;

(iii)    To hear and determine pending applications for the rejection, the assumption, or the assumption and assignment of Unexpired Leases and Executory Contracts and the allowance of Claims resulting therefrom, and to determine the rights of any party in respect of the assumption or rejection of any Executory Contract or Unexpired Lease;

(iv)    To hear and determine any and all adversary proceedings, applications, or contested matters, including any remands or appeals;

(v)    To hear and determine matters concerning state, local and federal taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

(vi)    To hear and determine all controversies, disputes, and suits which may arise in connection with the execution, interpretation, implementation, consummation, or enforcement of the Plan or in connection with the enforcement of any remedies made available under the Plan;

(vii)    To liquidate any disputed, contingent, or unliquidated Claims;

(viii)    To ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are accomplished as provided in the Plan;

(ix)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(x)    To enter and implement such orders as may be necessary or appropriate in furtherance of confirmation, implementation, or consummation of the Plan;

(xi)    To issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with Consummation or enforcement of the Plan;

(xii)    To enable the reorganized Debtors to prosecute any and all proceedings which may be brought to set aside liens or encumbrances and to recover any transfers, assets, properties or damages to which Debtors or the Reorganized Debtors may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws, including Causes of Action, controversies, disputes and conflicts between Debtors or the Reorganized Debtors and any other party, including, but not limited to, any objections to claims, suits for avoidance and recovery of preferences or fraudulent transfers, and suits for equitable subordination of Claims;

(xiii)    To consider any modification of the Plan pursuant to § 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(xiv)    To enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce the terms and conditions of the Plan and the transactions contemplated under the Plan;

(xv)    To hear and determine any other matter not inconsistent with the Bankruptcy Code and Title 28 of the United States Code that may arise in connection with or related to the Plan; and

(xvi)    To enter a Final Decree closing the Chapter 11 Cases.

    **15.2**    <u>**Abstention and Other Courts**</u>.    If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to this Chapter 11 cases, Section 15.1 of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

    DATED this 14th day of November, 2024.

**TIJUANA FLATS RESTAURANTS, LLC**

*/s/ James J. Greco* **\***

By_____

    James J. Greco
    Its Chief Executive Officer

-and-

**THAMES | MARKEY**

*/s/ Richard R. Thames*

By _____

    Richard R. Thames

Florida Bar Number 0718459
50 North Laura Street, Suite 1600
Jacksonville, Florida 32202
(904) 358-4000
rrt@thamesmarkey.law

Attorneys for Tijuana Flats Restaurants, LLC
and Tijuana Flats #176, LLC

\*   With Consent