UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov

In re:

Tijuana Flats Restaurants, LLC, et al.,

Debtors.

_____/

Chapter 11

Case Nos.: 3:24-bk-1122-BAJ and 3:24-bk-1128-BAJ

(Jointly administered under 3:24-bk-1128-BAJ)

## **OBJECTION TO DEBTORS' JOINT PLAN OF REORGANIZATION**

The United States Trustee for Region 21, Mary Ida Townson ("United States Trustee"), by and through the undersigned counsel, files this Objection to the Debtors' Joint Plan of Reorganization ("Joint Plan"; Doc. No. 489) and in support thereof states the following.

## **SUMMARY OF ARGUMENT**

The United States Trustee objects to the injunctive, discharge, and exculpatory provisions at Article XI of the Joint Plan, as well as similar provisions throughout the Joint Plan, for the following reasons. First, to the extent that applicable law authorizes exculpation beyond 11 U.S.C. § 1125(e), the Joint Plan contains multiple exculpation clauses that, collectively and individually, exceed what has been permitted under relevant law. Second, contrary to Eleventh Circuit precedent, the Joint Plan implements *Barton*-style gating to require parties to seek bankruptcy court approval before suing the Debtors or Reorganized Debtors for claims relating to the bankruptcy case. Even if such gating is not *per se* forbidden, there is no basis for the Court to grant such gating here. Third, although the Joint Plan purports not to include a third-party release, the inclusion of the undefined term "Releasee" along with the sprawling and confusing nature of the Joint Plan's generic "Release"

1

clause suggests that the provisions of the Joint Plan may nonconsensually release non-debtors claims against other non-debtor third parties. Fourth, the discharge should occur on the confirmation date and should be co-extensive with the discharge permitted under statute. Fifth, the United States Trustee also objects to the waiver of the stay under Federal Rule of Civil Procedure 3020(e) because it risks making any appeal of the Joint Plan equitably moot before any objecting party can seek a stay. For these reasons, the Joint Plan should not be confirmed in its present form.

## PROCEDURAL BACKGROUND

1. On April 19, 2024 ("Petition Date"), Tijuana Flats Restaurants, LLC, and one affiliated debtor, Tijuana Flats #176, LLC (together, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.

2. On April 24, 2024, the Court entered an Order jointly administering the Debtors' cases for administrative purposes only (Doc. No. 38).

3. The Debtors have utilized the bankruptcy process to retain profitable locations and close unprofitable locations through the assumption of certain commercial leases and the rejection of others (Doc. No. 490 at 14-15).

4. No official committee of unsecured creditors has been appointed in this case, despite the United States Trustee's attempts to find interested creditors.

5. On November 14, 2024, the Debtors filed the Joint Plan and the Joint Disclosure Statement (Doc. Nos. 489 and 490). Article XI of the Joint Plan, which is titled "Settlement, Discharge, Effect of Confirmation and Related Provisions," contains the various injunctive and exculpatory provisions that are the subject of this Limited Objection (Doc. No 489, at 26-30). As set forth below, other exculpatory provisions are scattered throughout the Joint Plan.

6. Also on November 14, 2024, the Debtors filed Motion for Order (I) Approving Disclosure

Statement, (II) Determining Dates, Procedures and Forms for Plan Solicitation Process, (III) Establishing Vote Tabulation Procedures, (IV) Establishing Objection Deadline, (V) Establishing Deadline for Filing Administrative Expense Claims, and (VI) Scheduling Hearing to Consider Confirmation of Plan ("Procedures Motion"; Doc. No. 501).

7. On November 21, 2024, the Court granted the Procedures Motion and set a deadline of January 7, 2025, to object to the Joint Plan. This Objection is timely filed.

## OBJECTIONS TO CONFIRMATION

### A. The Joint Plan's Exculpation Provisions Should be Consolidated and Narrowed

8. The Plan has several separate exculpation provisions that apply to somewhat different (but overlapping) parties and contain somewhat different (but overlapping) standards of care. The various exculpatory sections of the Joint Plan are as follows.

9. Article VIII, Section 8.7 is entitled "Exoneration of Certain Parties" and operates for the benefit of "affiliates, officers, directors, representatives, attorneys, financial advisors, and agents of Debtors." This section applies to actions taken between the Petition Date and the effective date and contains an exception for "willful misconduct or gross negligence."

10. Another exculpation provision is found at Article XI, Section 11.4. It is entitled "Exculpation" and applies to "Exculpated Parties" which is defined as "(i) the Debtors, (ii) all managers, officers and directors of the Debtors, and (iii) the Debtors' professionals, including counsel, accountants and other agents." This section appears to run from an undisclosed starting point (perhaps the beginning of time) until the effective date. This section contains an exception for "willful misconduct or actual fraud" (but not gross negligence) and contains a presumption of good faith.

11. Another exculpation provision is found at Article 14, Section 14.8. It is entitled "Votes

Solicited in Good Faith" and provides that the "Exculpated Parties" (as defined above) have solicited the Joint Plan materials in good faith and are entitled to the protection of 11 U.S.C. § 1125(e), which is the statutory provision providing an exculpation in connection with the good faith solicitation of plan materials.

12.   Arguably, yet another exculpation is included in Article XI, Section 11.2, insofar as that section seeks to release the Reorganized Debtors for activities conducted during in connection with the negotiation and solicitation of the Joint Plan. Finally, the Joint Plan at Article 9, Section 9.7 provides for an exculpation in favor of the Debtors and their professionals in connection with plan distributions except in cases of "gross negligence, willful misconduct, or fraud."

13.   As a preliminary matter, the Joint Plan should only have one exculpation clause, instead of several exculpation clauses that cover somewhat different parties, different time periods, and operate according to different legal standards. The natural place for the exculpation clause is likely in Article XI, along with the injunctive provisions of the Joint Plan.

In addition, to the extent that applicable law authorizes exculpation beyond 11 U.S.C. § 1125(e), most courts that have approved exculpation clauses have held that only estate fiduciaries, like trustees, the debtor's officers and directors, official committees and their members, and counsel to estate fiduciaries may be exculpated and only for court-supervised conduct that carries out estate fiduciary duties during the chapter 11 case; that is, conduct that occurs after the petition has been filed and before the plan's effective date. *See, e.g.*, *Matter of Highland Cap. Mgmt., L.P.*, 48 F.4th 419, 437 (5th Cir. 2022) ("any exculpation in a Chapter 11 reorganization plan [must] be limited to the debtor, the creditors' committee and its members for conduct within the scope of their duties, 11 U.S.C. § 1103(c), and the trustees within the scope of their duties . . . ."); *In re Pac. Lumber Co.*, 584 F.3d 229, 252 (5th Cir. 2009) (same); *In re PWS Holding Corp.*, 228 F.3d

4

224, 246 (3d Cir. 2000) (court considered whether an official committee of unsecured creditors could be exculpated and held that 11 U.S.C. § 1103(c) implies both a fiduciary duty and a limited grant of immunity to members of the unsecured creditors' committee); *Patterson v. Mahwah Bergen Retail Grp., Inc.*, 636 B.R. 641, 700–01 (E.D. Va. 2022) ("Exculpation is appropriate when it is solely limited to fiduciaries who have served a debtor through a chapter 11 proceeding") (*citing In re Health Diagnostic Lab. Inc.*, 551 B.R. 218, 232-33 (Bankr. E.D. Va. 2016)); *In re Wash. Mut., Inc.*, 442 B.R. 314, 350-51 (Bankr. D. Del. 2011) ("[An] exculpation clause must be limited to the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the Committees and their members, and the Debtors' directors and officers.").

14. Following this approach, vaguely defined parties such as "affiliates," "agents," and "representatives" should be eliminated from any exculpation and any exculpation should only cover conduct occurring from the Petition Date until the effective date. *See In re Mallinckrodt PLC*, 639 B.R. 837, 883 (Bankr. D. Del. 2022) (exculpation "only extends to conduct that occurs between the Petition Date and the effective date.")  Furthermore, the "Reorganized Debtors" should also not appear in the exculpation clause because they will not exist until after the effective date and thus have engaged in no conduct that could be exculpated.

15. The standard of care, which currently varies across the exculpation clauses, should also be a bar no higher than "fraud, gross negligence, or willful misconduct," which is the usual standard in this District, and was approved by this Court in the *Winn-Dixie* case. *In re Winn-Dixie Stores, Inc.*, 356 B.R. 239, 262 (Bankr. M.D. Fla. 2006). In addition, any provision that provides a presumption of good faith should be eliminated. It does no good to provide a conduct-based exception to the exculpation clause and then immediately close the door to that exception by introducing a presumption.

5

### B. The Court Should Not Authorize *Barton*-style Gating in the Plan Injunction

16. The Plan Injunction at Article XI, Section 11.5 contains a "gating" provision beginning in the fifth paragraph. This section requires any party with a claim against the Debtors relating to the bankruptcy case to first come before the bankruptcy court and seek a determination that (1) the claim is "colorable"; and (2) seek "specific authority" to bring the claim. This would appear to be an application of the so-called *Barton* doctrine. The doctrine originates from the 19th century railroad case of *Barton v. Barbour*, 104 U.S. 126 (1881), where the Supreme Court held that federal receivers cannot be sued without the permission of the appointing Court. Notably, part of the Supreme Court's rationale was that the suit at issue would involve estate assets. *Id.* at 128 ("His judgment, if he recovered one, would be against the defendant in his capacity as receiver, and the execution would run against the property in his hands as such."); *id.* at 129 ("A suit therefore, brought without leave to recover judgment against a receiver for a money demand, is virtually a suit the purpose of which is, and effect of which may be, to take the property of the trust from his hands and apply it to the payment of the plaintiff's claim, without regard to the rights of other creditors or the orders of the court which is administering the trust property."); *id.* at 130 ("The claim of the plaintiff, which is against the receiver for a personal injury sustained by her while travelling on the railroad managed by him, stands on precisely the same footing as any of the expenses incurred in the execution of the trust, and must be adjusted and satisfied in the same way."). The doctrine was later applied to chapter 7 trustees in bankruptcy. *Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000).

17. Regardless of whether *Barton* itself is applicable, the Court should not approve *Barton*-style gating in this case for at least two reasons. First, the Eleventh Circuit has held that the protections of the *Barton* doctrine end, or are at least greatly restricted, when a bankruptcy case is

6

over. *Chua v. Ekonomou*, 1 F.4th 948, 953 (11th Cir. 2021) ("[T]he *Barton* doctrine has no application when jurisdiction over a matter no longer exists in the bankruptcy court.") (quoting *Tufts v. Hay*, 977 F.3d 1204, 1208 (11th Cir. 2020)). This recognizes the *Barton* rationale that the suits at issue be against estate assets. Moreover, 28 U.S.C. § 959 provides that trustees, including debtors in possession, may be sued without leave of court with respect to "transactions in carrying on business" in connection with the property with which they are entrusted.[1] To the extent anything in the provision would require parties to seek leave to file such actions, it would make no sense that the debtor would receive more protection after it emerges than it did while in bankruptcy.

18. Second, the gating provision in this case is a surplus provision that attempts to obtain additional advantage for the Debtors without any statutory or case-specific justification. The Debtors have not been tormented by a vexatious litigant who is attempting to derail the bankruptcy case. *See Matter of Highland Cap. Mgmt.*, L.P., 48 F.4th 419, 427-8 (5th Cir. 2022) (court approved limited gatekeeping clause in the "unique" circumstances of that case, which involved a struggle for control between the current and former managers of the debtor, and where the gatekeeping order was also supported by specific findings regarding the vexatious and bad faith conduct of the party against whom it was principally directed).

19. Accordingly, the Court should not allow the gating provisions in this case.

**C. Ambiguous Third-Party Release Language Must Be Removed or Clarified**

20. Nonconsensual third party releases are, of course, forbidden by the Supreme Court's landmark decision in *Harrington v. Purdue Pharma L. P.*, 144 S. Ct. 2071, 2079 (2024). Although

---

[1] "Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property." 28 U.S.C. § 959(a).

7

the Joint Plan does not expressly contain a third-party release, it does contain ambiguous language relating to third parties that should be clarified. At Article XI, Paragraph 11.3 the Joint Plan states that "No provision of this Plan, including without limitation, any release or exculpation provision, shall modify, release, or otherwise limit the liability of any Entity other than the *Releasees* and the Exculpated Parties, including without limitation, any Entity that is a co-obligor, guarantor or joint tortfeasor of a *Releasee* or Exculpated Party or that otherwise is liable under theories of vicarious or other derivative liability" (emphasis added). This provision is ambiguous because "Releasee," despite being capitalized, is not a defined term in the definitions section of the Joint Plan and thus it is not clear to whom it applies Accordingly, the term should be removed from the Joint Plan.

21. The potential confusion is amplified by Paragraph 11.2, which is generically labeled "Release." This paragraph is a single, 359-word, run on sentence. In its broadest possible reading it could conceivably reach direct claims of "affiliates and subsidiaries" of claimholders against "an affiliate or subsidiary" of the Debtors.  Because no parties' consent has been sought, this would constitute a forbidden nonconsensual third-party release.

22. Accordingly, the term Releasee should be stricken from the Joint Plan, and Section 11.2 should be removed from the Joint Plan in its entirety because it is a source of confusion and is surplus to other Joint Plan provisions. This also reinforces the need for a clear statement (without the use of undefined terms) in the Joint Plan that nothing therein should be construed as a third-party release.

**D.  The Discharge Provision Should be Narrowed**

23. Article XI, Section 11.1 of the Joint Plan, which provides for the discharge of claims pursuant to 11 U.S.C. § 1141(d), does not accurately describe the scope of the discharge injunction in all respects. Section 1141(d) creates a default rule that the discharge applies to claims "before

8

the date of . . . confirmation." However, the Joint Plan states that the discharge applies to all claims "that arose before the Effective Date." This temporal difference between discharge at confirmation and discharge at the effective date can be significant, especially if the Joint Plan is appealed or the conditions to the effective date at Section 13.1 of the Joint Plan are not quickly realized.

24.   In addition, other provisions seek to impermissibly extend the discharge beyond what is available by statute. Article XI, Section 11.2 seeks to release (*i.e.*, discharge) claims through the effective date. It also seeks to release things that are *not even claims yet* by including so-called "Claims" that are "accrued or unaccrued, existing or hereinafter arising." In so doing, it steps beyond the limitations under section 1141(d) that the discharge only applies to any "debt" (*i.e.*, "liability on a claim" under 11 U.S.C. § 101(12)) that "arose before the date of . . . confirmation." Again, Section 11.2 should be removed from the Joint Plan because it is a source of confusion and is surplus to other provisions. The Plan Injunction at Section 11.5 also ties the discharge to the effective date. This section should be amended to reflect the correct scope of the statutorily permitted discharge injunction.

### E.  The Court Should Not Approve the Rule 3020(e) Waiver

25.   The Court should not approve the waiver of Federal Rule of Bankruptcy Procedure 3020(e) contained at Section 14.2 of the Joint Plan. As a preliminary matter, Section 14.2 appears to be contradictory of Section 14.1. Section 14.2 states that the Joint Plan will be effective and binding immediately, whereas Section 14.1 states that the Joint Plan will be effective and binding on the effective date. The effective date can only occur after the confirmation order becomes final, which will require no less than 14 days, and the conditions described at Section 13.1 must have occurred. As such, it is unclear how Sections 14.1 and 14.2 can be reconciled with each other.

26.   In any case, the 3020(e) waiver should not be approved because it may prejudice an

objecting party who wishes to seek a stay of the confirmation order for purposes of appeal. Courts may dismiss appeals based on equitable mootness where the appealing party does not seek a stay. *See, e.g.*, *GBR Grp. Ltd v. Water Marble Holdings, LLC*, No. 3:23-CV-34-MMH, 2023 WL 7710856, at *3 (M.D. Fla. Nov. 15, 2023) (dismissing appeal where appellant failed to seek a stay with District Court). For these reasons, the Court should not approve the Rule 3020(e) waiver.

WHEREFORE, the Court should (1) deny confirmation of the Joint Plan, (2) require the Joint Plan to be amended consistent with this objection; and (3) take such other action as the Court deems appropriate.

DATED:  January 7, 2025

>Respectfully submitted,
>
>Mary Ida Townson
>United States Trustee, Region 21
>
>     */s/ Scott Bomkamp*
>Scott Bomkamp, Trial Attorney
>Florida Bar No.: 0578541
>United States Department of Justice
>Office of the United States Trustee
>George C. Young Federal Building 400 W. Washington St., Suite 1100
>Orlando, FL 32801
>Telephone No.:  (407) 648-6069
>Facsimile No.:   (407) 648-6323
>scott.e.bomkamp@usdoj.gov

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing objection has been served electronically through CM/ECF on January 7, 2025, to all parties having appeared electronically in the instant matter and by First Class mail on the following.

Tijuana Flats Restaurants, LLC
2300 Maitland Center Parkway
Suite 306
Maitland, FL 32751

Tijuana Flats #176, LLC
2025 Riverside Avenue
Suite 4/5
Jacksonville, FL 32204

The 1007-2 Parties in Interest List
(as set forth at Exhibit A)

                                             /s/  Scott Bomkamp
                                             Scott Bomkamp, Trial Attorney